## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHELLE LEE HOFF,                                     Case No. 1:17-cv-550

        Plaintiff,                                     Black, J.
                                                       Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Michelle Lee Hoff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

In April 2014, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on February 21, 2008, based upon a combination of multiple physical impairments that arose following a work-related injury, and mental impairments including depression. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ.

On April 27, 2016, Plaintiff appeared with counsel and gave testimony before ALJ Catherine Ma; her husband and a vocational expert also testified. (Tr. 33-79). At 35, Plaintiff was considered a younger individual on the date of her alleged disability, and at

1

41, remained in that age category on June 30, 2014, her date last insured for purposes of DIB.[1]  She completed high school and vocational training in early childhood education, with most of her past relevant work in the childcare industry.  She lives with her husband, her teenage son, and a college-age daughter.  Plaintiff testified that most of her problems began when she slipped and fell on a patch of black ice in February 2008, while working as an early childhood education teacher at the Goddard School.

On May 26, 2016, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 11-27).   The ALJ determined that Plaintiff has severe impairments of spine disorder, degenerative disc disease, obesity, attention deficit disorder, and affective disorders. (Tr. 13). The ALJ found that other alleged impairments, including pain in her shoulder and knee, gastroesophageal reflux disease, diabetes, asthma and hypertension, were all either well-controlled conditions or were otherwise non-severe because they did not cause more than a minimal effect in her ability to perform work activities.  (Tr. 14).  Plaintiff does not dispute the ALJ's determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability.  (Tr. 14).

The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of light work, subject to the following limitations:

> [S]he could frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds.  She could occasionally stoop.  She was limited to performing simple, routine tasks but not at a production rate pace.  She could tolerate occasional interaction with supervisors, co-workers and the public.  She was limited to occasional routine work changes.

---

[1]In order to be entitled to DIB, Plaintiff must prove she became disabled on or before her date last insured.

(Tr. 15). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" (totaling nearly five million) jobs in the national economy, including the representative jobs of order caller, price marker, and house sitter. (Tr. 26). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred: (1) by failing to provide "good reasons" for rejecting the opinions of three treating physicians; (2) by giving the greatest weight to two non-examining medical consultants; (3) by giving little weight to the opinions of two physicians who evaluated Plaintiff on behalf of the Ohio Bureau of Workers' Compensation; and (4) by finding Plaintiff to be less than completely credible. All four of Plaintiff's claims pertain to her alleged physical limitations and pain level; she does not challenge the ALJ's assessment of her mental limitations.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation

omitted). In conducting this review, the court should consider the record as a whole.

*Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35

F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability

benefits, the Social Security Agency is guided by the following sequential benefits

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial

gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's

impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether or not the claimant can

still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his or her past relevant work, the burden of proof shifts to

the agency to determine whether a significant number of other jobs which the claimant

can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*,

459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

## B. Plaintiff's Claims

### 1. Evaluation of Treating Physician Opinions

Plaintiff first criticizes the ALJ's failure to adopt the opinions of three treating physicians or to give "good reasons" for the weight given to them. Two of those physicians concluded, at times, that she was capable of sedentary work. Other physicians offered both similar and contradictory opinions; it was the ALJ's duty to resolve the conflicts between the divergent opinions.[2] Here, I find no reversible error in the ALJ's analysis of the three referenced opinions, because the ALJ appropriately explained why their opinions were not entitled to controlling weight.

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.927(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. Based upon the express language of the regulation, an ALJ is not required to give controlling weight to the opinion of a

---

[2]Although many varying opinions can be found in the record, Plaintiff's first claim of error focuses solely on Drs. Chunn, Yeh, and Simons.

treating physician if it is not well-supported, is internally inconsistent, and/or is inconsistent with the record as a whole.

In addition, the regulations draw distinctions between the type of medical "opinions" from treating physicians that are entitled to controlling weight, and legal determinations that must be made by an ALJ. "When a treating physician…submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is 'disabled' or 'unable to work' the opinion is not entitled to any particular weight." *Turner v. Com'r of Soc. Sec.*, 381 Fed. Appx. 488, 492 (6th Cir. 2010); *see also* 20 C.F.R. § 416.927(c)(1). Finally, it is the ALJ who remains responsible to determine a claimant's RFC. 20 C.F.R. §416.936(c).

When an ALJ does not give controlling weight to the medical opinion of a treating physician, the Commissioner is required to provide "good reasons" for that decision. *Id.* The ALJ must explain the amount of weight given to the opinion after considering the following relevant factors: the length, nature, and extent of treatment relationship, evidence in support of the opinion; consistency with the record as a whole; and the physician's specialization. 20 C.F.R. § 416.927(c). However, while an ALJ is required to provide "good reasons" for the weight given to the treating source's opinion, the ALJ is not required to provide "an exhaustive factor-by-factor analysis." *Francis v. Com'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

In the case presented, Plaintiff argues that the ALJ's analysis of the opinions of Drs. Chunn, Simons, and Yeh was inadequate or insufficient. To the contrary, the undersigned concludes that the ALJ's analysis of each of the three physicians' opinions is substantially supported by the record and satisfies the "good reasons" standard.

**Dr. Chunn**

Dr. Michael Chunn, a family medicine physician, began treating Plaintiff shortly after her fall at work. At a March 20, 2008 visit with him, he stated that her "[c]urrent activity restrictions are no lifting > 10 lbs, freq position changes, no bending, stooping, reaching." (Tr. 1301). He subsequently completed multiple forms opining that Plaintiff was disabled, but never again provided specific restrictions. For example, on April 11, 2008, Dr. Chunn wrote on a prescription pad: "Please excuse pt from work starting 4/11 – 4/22/08 due to disability." (Tr. 371). A second nearly identical note, dated April 10, 2008, lists an end "disability" date of April 19, 2008. (Tr. 372).

Later, Dr. Chunn partially completed many one-page forms for the Bureau of Workers' Compensation. Notably, Dr. Chunn left most of the forms entirely blank, declining to complete the portion that sought (in check-box style) information on the claimant's lifting restrictions, postural restrictions, or other work limitations. On a form dated April 24, 2008, Dr. Chunn summarily opined that Plaintiff could not return to light duty work because she "has attempted to perform light duty tasks since the injury and has not been able to tolerate the pain," thus ostensibly remaining "disabled" from work through July 11, 2008. (Tr. 360-361; Tr. 345). On June 2, 2008, Dr. Chunn stated that Plaintiff was disabled from April 11, 2008 to an "estimated" date of July 11, 2008 based upon active management of her acute back injury. (Tr. 351, 365).

On June 18, 2008, Dr. Chunn again opined that Plaintiff was totally disabled from April 11, 2008 through July 11, 2008, although in this note, he suggests that her disability might be specific to a position that requires more than light duty work: "Pt. is awaiting approval for surgical repair of injuries. She states she is unable to tolerate the pain she experiences at work. *The current job description light duty seems reasonable however.*"

(Tr. 343, emphasis added). On June 24, 2008, Dr. Chunn partially completed another form, opining vaguely that Plaintiff was "totally disabled from work from June 24 until "after [future] surgery." (Tr. 320). On July 8, 2008, Dr. Chunn stated again that Plaintiff was disabled from work beginning April 11, 2008 until "after surgery and release by Dr. Yeh." (Tr. 316).

Several of Dr. Chunn's notes reflect his reliance on Plaintiff's reports of pain and/or Plaintiff's report that another physician had opined she was disabled. For example, on July 22, 2008, Dr. Chunn stated: "Injured worker has been placed *totally disabled from work by the neurosurgeon. Justification for such designation needs to come from him.*" (Tr. 310, emphasis added). On the July 22, 2008 form, no dates indicate whether the alleged disability is temporary or permanent. Consistent with all other forms, the work/non-work functional capabilities check-boxes are again left entirely blank, providing no information as to any specific limitations. (*Id.*) On September 30, 2008, Dr. Chunn partially completed another form, opining that Plaintiff could not return to her position as a teacher and could not return to other work until an estimated date of January 1, 2009. He again provided no explanation other than a reference to active management of her acute back injury. (Tr. 1414). On January 25, 2010, Dr. Chunn partially completed one last form, again opining that Plaintiff could not return to her work as a teacher, and that she was unable to return to other employment due to "decreased lumbar ROM" and "pain," and because: "Pt has not participated in voc. Rehab/ work hardening yet." (Tr. 1341). The "estimated" return to work date listed on that form was July 1, 2010.

After acknowledging the multiple statements by Dr. Chunn that Plaintiff was "totally disabled from various dates," the ALJ gave those opinions "little weight." As reflected above, virtually all of the "opinions" were not medical opinions but instead conclusory

determinations of "disability" that were wholly unsupported. The ALJ appropriately dismissed those statements as not entitled to controlling weight, because such determinations are "reserved to the Commissioner." (Tr. 21). In addition, Dr. Chunn's statements were not well-supported and were inconsistent with the record as a whole. Aside from the fact that an opinion on the ultimate issue of disability is never entitled to controlling weight, the ALJ reasoned that it is not "known what [Dr. Chunn] meant by 'totally disabled' or unable to perform work," given that the record "does not demonstrate an inability to perform basic activities of daily living, including driving or performing household chores," and that "objective evidence demonstrated only slightly decreased muscle strength in the lower extremities and a slow gait," which "[did] not support a complete inability to perform all work." (Tr. 21). The ALJ also noted that despite Plaintiff's complaints, she "demonstrated an appropriate affect without demonstrating pain behavior." (*Id.*)

The ALJ's reasoning for rejecting Dr. Chunn's opinions is well-supported by substantial evidence in the record as a whole. Dr. Chunn offered specific restrictions on only one occasion, limiting Plaintiff to lifting less than 10 pounds and opining that she could not stoop, bend, kneel or squat. The ALJ gave that opinion "partial weight," noting that it was provided only a month after Plaintiff's initial injury, at a time when Plaintiff demonstrated a normal gait, 5/5 strength, and negative straight leg raises, despite her reduced range of motion in her lumbar spine. The ALJ cited evidence that "these restrictions did not last for 12 consecutive months since by January 6, 2009 the claimant demonstrated a 100% weight bearing ability, 5/5 muscle strength throughout and normal sensation to light touch, and "was able to engage in activities of daily living that required some bending, stooping and kneeling." (Tr. 22).

**Dr. Hwa-Shain Yeh**

Dr. Yeh was Plaintiff's treating neurosurgeon. In April 2008, Dr. Yeh initially offered conservative management or surgery; Plaintiff declined surgery at that time. (Tr. 368). In June 2008, Dr. Yeh opined that Plaintiff should not work, but provided no explanation at all. (Tr. 341). Eventually, on December 22, 2008, Dr. Yeh performed a spinal fusion surgery from L4 to S1, and inserted hardware. (Tr. 403-405). At a post-operative visit in March 2009, Dr. Yeh noted: "The patient has not returned to work," despite improvement in her ability level and symptoms, only moderate post-operative pain, and the lack of any post-operative complications. (Tr. 673). At that time, Dr. Yeh opined that Plaintiff "is …permitted to take a desk job with restriction of weight lifting, no more than 15 pounds for three months." (Tr. 673). However, in April 2009, an x-ray demonstrated an interval increase in the degree of slippage with fracture of one piece of hardware. (Tr. 419). Therefore, in June 2009, Plaintiff underwent a second surgery. (Tr. 431-32, 499-500).

The ALJ gave "little weight" to Dr. Yeh's March 2009 opinion that Plaintiff could "take a desk job" and lift up to 15 pounds for a period of three months, implying fewer or no restrictions after that time. Like Dr. Chunn's conclusory "disability" opinions, any opinion by Dr. Yeh on the ultimate issues was "reserved to the Commissioner." (Tr. 21). The ALJ also found Dr. Yeh's three-month "desk job" opinion was not entitled to controlling weight because it was not well-supported; in fact, "Dr. Yeh fails to note what objective evidence he relied on in providing the …restrictions. Furthermore, at the time…the claimant demonstrated 100% weight bearing, with reported improved activity level and pain symptoms." (Tr. 22). The ALJ further observed that Plaintiff demonstrated 5/5 muscle strength through, and normal sensation to the touch only weeks prior to Dr. Yeh's opinion. (Tr. 22). The ALJ also noted the medical evidence wherein Plaintiff was

consistently found to have negative straight leg raises, (Tr. 17-18), and that her 100% weight bearing continued with improving activity level and pain symptoms at the time of Dr. Yeh's opinion. (Tr. 22).

In her reply memorandum, Plaintiff argues that the ALJ failed to address specific records from Dr. Yeh that reflected that prior to and after her two surgeries by Dr. Yeh, including after implantation of the spinal cord stimulators, Dr. Yeh's clinical findings included decreased deep tendon reflexes, decreased and painful lumbar range of motion, week lumbar strength, slow and cautious gait and station, and parethesia in her bilateral lower limbs. (Doc. 14 at 2). Plaintiff argues that those clinical findings prove that she "continued to have ongoing problems in her low back, and legs which limited her ability to engage in work related activity." (*Id.*)

There are several problems with Plaintiff's argument. First, the argument expands so greatly on Plaintiff's first claim concerning Dr. Yeh, including citations to multiple portions of the record when none were originally included, as to constitute a new claim presented for the first time in reply.[3] However, even considering the greatly expanded claim, the undersigned still finds no reversible error. "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 Fed.Appx. 727, 733 (6th Cir. 2005) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Kornecky v. Com'r of Soc. Sec.,* 167 Fed. Appx. 496, 508 (6th Cir. 2006) (holding that an ALJ is not required to discuss "every single piece

---

[3]Plaintiff also argues for the first time in reply that the ALJ erred by failing to "fully" address the medical findings of Dr. Tann Nichols. This new claim should not be considered. However, the ALJ adequately discussed Dr. Nichols' findings. (Tr. 18).

of evidence submitted by a party.") (additional citations omitted). Contrary to Plaintiff's assertion, the ALJ's opinion contains multiple references to the records that Plaintiff claims that the ALJ did not discuss. (*See, e.g.*, Tr. 16, citing Exhibit 1F/32 [Tr. 337-338] and noting evidence of Plaintiff's "slow cautious gait" and reported "intermittent" paresthesis during that June 2008 exam; Tr. 17, citing 6F/28 [Tr. 670]). Finally, while the cited records provide some evidence of pain and back impairment, they simply do not undermine the substantial evidence on which the ALJ relied (some of which is noted in the very same records) that Plaintiff's level of impairment was not disabling.[4] This court will not reverse merely because substantial evidence exists in the record to support a different conclusion. In sum, I conclude that the ALJ's stated reasons for giving "little weight" to Dr. Yeh's opinions are adequately articulated "good reasons" that are substantially supported by the record in this case.

**Dr. Simons**

In January 2010, Dr. Mitchell Simons, a pain management specialist, began treating Plaintiff. At the time, Plaintiff reported 70% pain relief and a pain level of 5/10 with narcotic medication. (Tr. 1025). In June 2011, Dr. Simons noted that Plaintiff was "doing fantastic," (Tr. 1018), with 60-90% pain relief after a spinal cord stimulator trial. In September 2011, Plaintiff underwent surgery and placement of a surgical paddle for a permanent spinal cord stimulator. (Tr. 726). At a follow-up visit a week later, Dr. Simons noted the paddle lead was significantly relieving Plaintiff's pain, reducing her pain levels to a "2-3" on the pain scale. (Tr. 1010). In April 2012, Dr. Simons noted he was unsure

---

[4]Plaintiff's assertion that the cited clinical records reflect Dr. Yeh's findings after the completion of both surgeries and the implantation of her spinal cord stimulator also is incorrect. Many of the records are prior to Dr. Yeh's two surgeries. The spinal cord stimulator was implanted in 2011; the latest of the clinical findings cited by Plaintiff predate that implantation. (*See, e.g.*, Doc. 14 at 2).

of the cause of a reported flare up of Plaintiff's pain given the lack of any change in her condition. (Tr. 1001). However, he noted that Plaintiff was "heading towards the hearing on her disability [and] that could be a factor emotionally." (*Id.*) At a follow-up appointment a few weeks later, he reduced the amount of pain medication due to reported drowsiness. (Tr. 1000). In May 2012, Plaintiff reported significant pain relief and Dr. Simons noted Plaintiff would start vocational rehabilitation. (Tr. 999).

In July 2012, Nurse Practitioner Buddendeck/Dr. Simons opined that Plaintiff "can do sedentary work, but the in and out of the car looking for work is over her restriction," because "if she could do that then she could do light duty work." (Tr. 995). Based upon the fact that Plaintiff reported having to "go to 10 places per week for face to face interviews" to look for work, Nurse Buddendeck stated that "no driving" should be added to Plaintiff's restrictions.[5] (*Id.*) On January 10, 2013, a note co-signed by Dr. Simons reflects that although Plaintiff had asked to be restricted to 2 hours per day of work in order to be able to obtain working wage loss, her treating physician "do[es] not believe that [reduction in hours] is appropriate for her." (Tr. 985). Instead of decreasing her work capacity from the stated 4 hours per day, on February 7, 2013, Dr. Simons increased her work capacity to 6 hours per day 3-4 days per week in order to "free her up some in her job search." (Tr. 984). In June 2013, Dr. Simons told Plaintiff he did not think it was a good idea for her to go on disability, and he thought she could work and continue looking for a new job. (Tr. 981). The records reflect Plaintiff's reports that she was continuing to set up interviews to find a new job. (Tr. 979-980).

---

[5]Although the note appears to have been dictated by Nurse Buddendeck, it reflects that "Dr. Simons was present…." (Tr. 995).

On December 27, 2013, Plaintiff attended another follow-up appointment with Nurse Buddendeck at Dr. Simons's office, at which Dr. Simons was present. The December 27 note states: "since no further surgery is recommended, she already has a spinal cord stimulator for treatment of her pain, we will recommend permanent total disability due to her Workers Comp injury." (Tr. 975). A month later on January 24, 2014, Dr. Simons wrote: "I assume since she cannot get down on the floor, she really cannot do the daycare she was doing, and that is the definition for disability. Therefore, her temporary disability should be turned into permanent based on the legal definition." (Tr. 974).[6] However, in the same note. Dr. Simons states that the pain management treatment is effective in "helping her to become more functional," with medication helping "at least 60 percent," and the spinal cord simulator benefitting her an even higher percentage. (*Id.*)

The ALJ gave Dr. Simons' "disability" opinions "little weight," on the basis that the ultimate decision on disability was "reserved to the Commissioner," and that it was not clear what Dr. Simons meant by "totally disabled" given records that reflected Plaintiff could continue to perform basic activities of daily living and had few objective findings that would support a complete inability to perform all work. (Tr. 21). Although Dr. Simons mistakenly believed that Plaintiff's inability to get down on the floor to perform her past job as a daycare worker rendered her totally disabled, the ALJ appropriately noted that "[n]ot only does the record fail to support a complete inability to get down on the floor…but …the inability to perform past work is only one step in the sequential evaluation." (Tr. 23). The ALJ next pointed out the inconsistency between the "various opinions [by Dr.

---

[6]Dr. Simons' belief that because Plaintiff could no longer perform her past relevant work as a teacher or daycare provider, she met "the definition for disability" does not conform with social security law.

Simons] regarding the claimant's functional ability despite little to no change in the claimant's objective condition." (Tr. 22). The ALJ noted that Dr. Simons's refusal to reduce Plaintiff's hourly work limits, because he felt she could work more, undermined any conclusion that she was disabled, and that the restrictions that had been requested by Plaintiff but rejected by Dr. Simons were not only unsupported by the medical record, but appeared to be based upon Plaintiff's financial motivation to increase her workers' compensation benefits rather than an actual inability to work. (Tr. 23).

In April 2012, Dr. Simons again questioned Plaintiff's subjective report of increased pain given the lack of any apparent objective change in her condition. (Tr. 24). In fact, from January 2012 through May 2013, Plaintiff's subjective complaints steadily increased even though her objective assessments, medication, use of spinal cord stimulator, and treatment plan remained essentially unchanged. (Tr. 982-986). There appears to be no basis for adjustments made by Dr. Simons to work-related limitations throughout the same period. Finally, the ALJ noted that "the record indicates [that] Dr. Simons provided…restrictions on May 14, 2012, the record does not contain a statement from Dr. Simons or objective reasoning for these restrictions." (Tr. 24). The ALJ also noted that it was "not clear who provided these restrictions," and the ALJ gave them "little weight" because they were unsupported even assuming that Dr. Simons provided them.

For the first time in her reply memorandum, similar with her argument with respect to Dr. Yeh, Plaintiff points to specific records authored by Dr. Simons (or Nurse Buddendeck) that she asserts the ALJ failed to discuss. However, as with the citations to Dr. Yeh's records, the ALJ specifically cites to most of the records that Plaintiff claims she "disregarded." (*See, e.g.* Tr. 19). Once again, the undersigned finds no reversible error and finds the ALJ's rejection of Dr. Simons' contradictory and unsupported opinions

to be substantially supported by the evidence in the record as a whole. I further conclude that the ALJ adequately articulated "good reasons" for her analysis.

### 2. Weight Given To State Agency Medical Consultants

In her second and third claims of error, Plaintiff argues that the ALJ erred by giving greater weight to the opinions of non-examining medical consultants than to the opinions of examining consultants. Despite a regulatory structure that generally requires ALJs to give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians," *see Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009), "[i]n appropriate circumstances," the opinions of non-examining consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Id.,* 581 F.3d at 409 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). However, in *Blakley* the Sixth Circuit reversed because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Id.*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, then, an ALJ is permitted to credit non-examining consulting opinions, but only if she articulates sufficient reasons for doing so.

On the record presented, the ALJ gave "great weight" to the physical RFC opinions of two non-examining consultants, Dr. Gerald Klyop and Dr. Diane Manos. Plaintiff argues that reversal is required under *Blakley*. However, unlike in *Blakley*, where the consultants had lacked access to a substantial body of critical evidence and the ALJ had failed to address that fact or discuss the relevant records, the ALJ here committed no similar error. The ALJ gave the opinions of the consultants "great weight" only after

explaining that they "were privy to the majority of the medical evidence dated prior to the date last insured." (Tr. 25). Indeed, relatively little medical evidence was submitted after Dr. Manos's December 2014 review, which review was dated six months *after* Plaintiff's date last insured. No other source had access to as complete a record, and Plaintiff does not identify any piece of medical evidence that the ALJ and/or the consultants failed to review.

The ALJ explained that despite Plaintiff's complaints of significant symptoms including pain, the objective evidence did not support her reported limitations, but instead was consistent with the consulting physicians' assessments. (Tr. 25).

> For example, the claimant does not demonstrate pain behavior, an impaired gait or positive straight leg raises. Despite alleging not doing anything and sleeping 16 hours a day, the record does not demonstrate atrophy or others [sic] symptoms of significant deconditioning since 2008. Therefore, the consultants' assessments are given great weight.

(Tr. 25).

The undersigned finds no reversible error. As discussed by the ALJ, the Plaintiff consistently displayed negative straight leg raises, beginning from her alleged onset date through her date last insured, as well as a normal gait. (Tr. 17-18). Following surgery for placement of a spinal cord stimulator in 2011, Plaintiff's pain level dropped to 2-3/10 and approximately six weeks after placement of the stimulator, Plaintiff reported such good relief that she began weaning herself off her narcotics. (Tr. 18, citing 726, 730, 1010). While Plaintiff still experienced some back pain, with a combination of physical therapy, her stimulator, injections and medication, Plaintiff's objective symptoms were relatively mild. (Tr. 20). Plaintiff herself stated that her stimulator and medication consistently provided 60% pain relief. (Tr. 967-77, 992-94, 996-99, 1004). Moreover, there was no evidence to support Plaintiff's claim that she slept 16 hours daily. (Tr. 25).

17

In her closely related third claim, Plaintiff argues that the ALJ erred in failing to give greater weight to the opinions of two examining consultants who completed physical RFC forms in the context of Plaintiff's workers' compensation claim. Specifically, one-time examining consultant Dr. Koppenhoefer opined in October 2009 that Plaintiff was then unable to work while she healed from recent back surgery, although he also predicted she may be able to perform sedentary work six months later after some healing occurred. (Tr. 1090-91). The ALJ reasonably found that the opinions of Dr. Koppenhoefer were not supported by objective medical evidence and were entitled to only "little weight." (Tr. 23-24, noting that Dr. Koppenhoefer "fails to acknowledge what objective findings support his opinion," and instead "relied on complaints of pain with palpation and decreased range of motion," which contrasted with objective findings of normal muscle strength, normal straight leg raises, and no evidence of atrophy).

In July 2010, Dr. Bell opined that Plaintiff still could perform sedentary work, but not her past work. (Tr. 1085). Dr. Bell acknowledged that he did not perform or have access to any functional testing results. (Tr. 1084). The ALJ also gave his opinion "little weight" because notwithstanding objective evidence that demonstrated decreased range of motion, Plaintiff continued to exhibit normal motor function and strength. The ALJ also noted that Dr. Bell's opinion that a stimulator was unlikely to improve her condition was contrary to the Plaintiff's own report of functional improvement with pain relief. (Tr. 23). Based on the evidence as a whole, the undersigned finds the ALJ's assessment of Dr. Bell's opinion to be substantially supported.

### 4. Credibility Assessment

Plaintiff's final claim is that the ALJ erred by finding Plaintiff to be less than completely credible. Plaintiff testified that she is unable to work due to her pain level and

estimated she could stand for a maximum of 10 minutes but spent most of her day seated on the couch and sleeps 16 hours per day, including 8 hours during the morning and afternoon. The ALJ found Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms not to be "entirely consistent with the medical evidence and other evidence in the record…." (Tr. 20). The ALJ explained her credibility analysis in multiple areas of the opinion.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387.

Plaintiff argues that the ALJ discredited her testimony on the basis that she was able to perform certain daily activities, which is far different from the ability to sustain "working eight hours a day in a labor-intensive job." (Doc. 8 at 5). The regulations permit an ALJ to consider a claimant's daily activity level as one factor in assessing the credibility of subjective pain complaints that are not wholly supported by objective evidence. *See also* SSR 16-3p, 2016 WL 1119029 at *7 (Mar. 16, 2016). Here, the undersigned concludes that the ALJ's adverse credibility finding is substantially supported and was based on many inconsistencies in the record.

For example, Plaintiff alleged part of her disabling pain came from bone spurs in her right shoulder, and that she had trouble reaching above her head and was limited to lifting a gallon of milk. (Tr. 16). However, the ALJ found based on the medical record that she did not have a severe impairment in her shoulder or knee, because she did not continue to complain after treatment. (Tr. 14). Plaintiff also alleged bladder urgency, but no medical evidence to support that complaint was noted and It was not listed as a severe impairment.

Plaintiff testified that she requires use of a wheelchair due to an inability to walk through a grocery store. She testified that she was able to navigate her home but only in pain. She testified that she shared cooking but relied on her husband and son to do laundry and wash dishes. (Tr. 16). She claimed that she was unable to shower daily due to pain, and alleged she slept for five to five and a half hours prior to noon and for another two to three hours prior to dinner, due to drowsiness from her medications. (Tr. 16). She alleged that therapy worsened her back pain even though the medical records appeared to contradict that claim. She admitted she continued to camp a few times a year and attributed her inability to camp more to the lack of money to travel rather than to any disability. (Tr. 16).

Although the ALJ noted inconsistencies between Plaintiff's subjective reports and the evidence in the record throughout her written opinion, the ALJ particularly focused on credibility issues in the following section:

> In terms of the claimant's alleged limitations, I find the objective evidence…does not fully support her allegations. For example, the claimant alleged significant deficits in her ability to engage in activities of daily living due to back pain; however, the record demonstrates little to no pain behavior. In fact, Dr. Simons often notes the claimant displayed a cooperative affect despite alleging serious pain including a pain level of 7/10. Even when following up with her vocational counselor, the claimant was often noted to not demonstrate pain behavior…. While the claimant

had extensive back surgery with repair of the rod, the record demonstrates that with physical therapy, a spinal cord stimulator, injections and medication, her objective symptoms have been relatively mild. She has not repeatedly demonstrated an impaired gait or the need for a cane despite alleging a decreased walking capacity, including the inability to walk around a store. Physical examination has demonstrated myofascial tenderness along with joint tenderness, however she has demonstrated 5/5 muscle strength and normal reflexes during most examinations. Examination has revealed some sensory deficits particularly in the right lower extremity; however, this objective finding does not explain the claimant's alleged severe limitations. Furthermore, the record demonstrates despite alleging extreme limitations in her ability to perform activities of daily living she has reported traveling to Myrtle Beach, going camping, and going out to dinner. In fact, the record demonstrates she reported camping three times in 2013 and camping as recent[ly] as Memorial Day weekend in 2014…. Her ability to engage in pleasurable activities, while alleging an inability to perform even daily activities of daily living hinders her allegations.

The medical evidence of record demonstrates that her doctors have routinely encouraged the claimant to stay active and lose weight in order to improve her reported pain complaints. Despite these recommendations, the record demonstrates the claimant has been unsuccessful…. [W]hale the claimant has alleged virtually an inactive lifestyle, the record does not demonstrate atrophy or other objective signs of such a sedentary lifestyle. Straight leg raises have ben routinely negative. Moreover, Dr. Simons noted that once the claimant expressed a desire to seek disability, she began reporting worsening in her back pain, with no objective change in her condition. Dr. Simons noted he felt there was an emotional factor to the claimant's reported pain symptoms. Finally, while the claimant has alleged severe side effects from her medication including [] sleeping for up to 8 hours during the daytime, the record fails to support her allegations. Instead, the record demonstrates the claimant often reported no side effects from her medication…. The claimant occasionally complained of dizziness or nausea, however these complaints did not last and were often contributed to [by] other factors. On occasion, the claimant did report drowsiness…, however, her medication was often adjusted and resulted in the claimant reporting no side effects the next visit. ….Moreover, she did not display a fatigued affect and did not allege sleeping half the day.

(Tr. 20-21).

The ALJ acknowledged Plaintiff's "back impairment and her extensive road to recovery," (Tr. 21), but made an adverse credibility determination based upon the many inconsistencies and contradictions in the record. For example, despite alleging extreme limitations in her abilities to engage in activities of daily living, including an inability to

21

shower regularly or perform personal care needs based on pain, the record reflected that Plaintiff was clean, appropriately dressed, with good hygiene. In addition, despite alleging severe depressive symptoms, she had not sought mental health treatment other than medication. (Tr. 21). And, despite complaints of intermittently increased pain with activity in 2010, "the claimant admitted she was minimally active with good walking ability and a fair quality of life." (Tr. 17). During a psychological evaluation performed in connection with her spinal cord implant trial in January 2011, Plaintiff stated that she performs household chores and runs errands, and that she showers and changes her clothes daily and independently. (Tr. 18). In October 2011, after surgical placement of the paddle for the spinal cord stimulator, Plaintiff reported good relief of her pain symptoms, being able to wean off her narcotics, and was advised to increase her activity level. (Tr. 18). In another psychological evaluation performed in June 2014, Plaintiff reported driving, folding laundry, taking care of her dog, making meals, walking briefly, reading, watching television, visiting relatives and friends, dining out, working on puzzles, using the computer, going to the store and attending appointments. (Tr. 20). She reported she continued to enjoy camping, 3-4 times in the summer of 2013 as well as over Memorial Day weekend in 2014, and that she attends her son's basketball games. (Tr. 20).

### III. Conclusion and Recommendation

As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230–231 (6th Cir.1990) (affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). The ALJ considered Plaintiff's back condition, including her pain complaints, to be limiting, but not disabling. That decision is supported by substantial evidence. Therefore, **IT IS**

**RECOMMENDED THAT** Defendant's decision be **AFFIRMED**, and that this case be

**CLOSED.**

 /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHELLE LEE HOFF  ,          Case No. 1:17-cv-550

     Plaintiff,          Black, J.
                     Bowman, M.J.
  v.


COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).